UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VERNON HUMPHRIES and REBECCA HUMPHRIES, *Plaintiffs*, v. STATE FARM LLOYDS, *Defendant*. | § § § § § § § § § § § § | Civil Action No. 3:20-CV-01163-X |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant State Farm Lloyd's (State Farm) motion for partial summary judgment on the plaintiffs Vernon and Rebecca Humphries' breach of the duty of good faith and fair dealing and related statutory claims. [Doc. No. 41]. After careful consideration, and as explained below, the Court has concluded that the Humphries have not pointed to sufficient evidence from which a reasonable jury could find that State Farm acted in bad faith. Accordingly, the Court **GRANTS** State Farm's motion for partial summary judgment on the extra-contractual claims. The Humphries' contract claim remains pending.

### I.   Factual Background

In October 2019, Vernon and Rebecca Humphries submitted a claim to State Farm under their homeowners insurance policy for damages sustained in a tornado. Shortly thereafter, an independent adjustor named Chris Chivers inspected the property, confirming that wind had blown the chimney into the back slope of the roof. Based on his inspection, Chivers wrote a repair estimate of $51,299.76. On the same

1

day, State Farm claim representative Ed Hand inspected for personal property damage. Hand wrote a personal contents inventory summary totaling $3,162.88, and, after subtracting depreciation, State Farm issued $2,117.82 to the Humphries for personal property damage.[1] After these inspections, Mr. Humphries called State Farm to complain, claiming Chivers had not properly considered areas of the home that he believed had been damaged. Shortly thereafter State Farm issued an actual cash value payment to the Humphries for damage to the home of $51,299.76 less depreciation and the Humphries' deductible. The Humphries voiced no further complaints at that time.

In November 2019, GreenCo—a contractor who already provided the Humphries some temporary repairs—completed an estimate for repairs at the property for $101,031.79. However, the Humphries did not inform State Farm of this estimate. Around the same time, State Farm began paying for the Humphries' temporary housing, as well as for various costs associated with moving their personal belongings. State Farm continued to pay for the Humphries' housing until June 2020. In December 2019, State Farm contacted the Humphries to inquire about the progress of repairs, and Mr. Humphries advised State Farm that repairs had not yet started due to an outstanding report from a foundation specialist.

Then, in January 2020, the Humphries sent State Farm a Texas Deceptive Trade Practices Act (DTPA) demand and a Texas Insurance Code Chapter 542A

---

[1] A few months later, State Farm issued a supplemental personal property payment of $572.10 for two televisions which were damaged in the storm and proved to be no longer functional.

notice letter, alleging actual damages of $120,370.41, and with a total DTPA demand of $365,511.23. In response, State Farm scheduled a second inspection and asked the Humphries to send the estimate that provided the basis for the $120,370.41 in actual damages, but the Humphries did not do so. In March 2020, State Farm claim representative Bryon Turner conducted a second inspection of the property. Based on additional damage he found, Turner wrote a new repair estimate of $66,177.38, and State Farm issued a supplemental payment to the Humphries to make up for the discrepancy between State Farm's first and second estimate. At that time, State Farm also told the Humphries that, based on the status of repairs, it would continue paying for the Humphries temporary housing until June 10, 2020.

Unsatisfied, the Humphries filed suit against State Farm in Texas state court in April, 2020, and State Farm removed the case to this Court. Since filing suit, the Humphries changed the amount they claim is necessary for repairs five times based on different estimates by their expert, Duane Smith, settling on $247,138.71, more than double their original claim. This increase seems to be due in significant part to a report they obtained from an electrician after filing suit, which claims that rewiring is necessary throughout the entire house. Meanwhile, at Mr. Humphries's deposition, the Humphries produced an $80,000 contract between the Humphries and a contractor, HNL. According to Mr. Humphries, this contract covers all necessary repairs as well as some additional items, including installing an outdoor pergola that

the Humphries did not have before the storm.² For its part, State Farm has also changed its estimate since this suit was filed and it conducted a further inspection, arriving at $70,200.90. State Farm issued another supplemental payment reflecting this new estimate.

## II.  Legal Standards

Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."³ "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"⁴ "When a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial."⁵

To support a claim of breach of the duty of good faith and fair dealing against an insurer, a plaintiff must show "that the insurer had no reasonable basis for denying or delaying payment of a claim, and that it knew or should have known that fact."⁶ But "the mere fact that [a defendant's] valuation is lower than competing

---

² The Humphries do not address the HNL contract or Mr. Humphries's statements regarding it in their briefing for this motion.

³ *Thompson v. Mercer*, 762 F.3d 433, 435 (5th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

⁴ *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

⁵ *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999).

⁶ *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–51 (Tex. 1997) (cleaned up).

4

valuations does not give rise to bad faith claims under Texas law."[7] This is true even when the difference in valuations is significant.[8] So, "[e]vidence establishing only a bona fide coverage dispute does not demonstrate bad faith. . . . But an insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial."[9]

### III.   Analysis

The Humphries predicate their claim of bad faith on their characterization of State Farm's investigation as outcome-oriented and pretextual.[10] But the Humphries "[do] not provide any expert testimony, proof of standard industry practice, or legal authority" whatsoever to support their claim that State Farm's investigation was not conducted adequately and in good faith.[11] For example, the Humphries argue that the length of time the adjustor spent on the initial inspection was unreasonably short, but point to no evidence indicating that it was at all atypical by State Farm or industry-wide standards.[12] Similarly, they contend that State Farm should have sent an engineer rather than an adjustor to conduct the first inspection because structural damage was involved and should also have at some point sent an electrician, but fail

---

[7] *Cantu v. State Farm Lloyds*, No. 7:15-CV-00317, 2016 WL 10733201, at *3 (S.D. Tex. Aug. 22, 2016).

[8] *See, e.g.*, *First Am. Title Ins. Co. v. Patriot Bank*, No. 01-14-00170-CV, 2015 WL 2228549, at *7 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

[9] *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

[10] Doc. No. 45 at 8.

[11] *Nino v. State Farm Lloyds*, No. 7:13-CV-318, 2014 WL 6674418, at *6 (S.D. Tex. Nov. 24, 2014).

[12] Doc. No. 45 at 17.

to allege that State Farm's decisions represented a deviation from standard practice.[13]

Perhaps most illustrative of the Humphries' failure to provide any sort of objective measuring stick against which to evaluate State Farm's investigation, though, is their argument that Chivers's inspection was so obviously deficient that it was even apparent to Mr. Humphries, who "is not an adjustor, engineer, or any kind of property damage expert."[14]  While the Humphries characterize Mr. Humphries's lack of expertise as a feature of their argument, it is in fact a flaw.  For "[t]here is no factual or legal basis to equate [Mr. Humphries's] opinion with expert testimony or reasonable industry standards capable of challenging the reliability of an adjustor's work."[15]  And allowing an interested layman's negative opinion of a technical investigation to serve as adequate evidence of the investigator's bad faith would be deeply "problematic."[16]  Without anything objectively indicating that State Farm's investigation may have been inadequate and pretextual, the Humphries lack sufficient evidence to support their claim of bad faith.[17]

This lack of evidence is illustrated by comparing the Humphries' case to *State Farm Fire & Casualty Co. v. Simmons*, a case from which they claim support.  There,

---

[13] *Id.*

[14] *Id.* at 18.

[15] *Nino*, 2014 WL 6674418, at *6.

[16] *Id*.

[17] The Humphries' assertion that Ed Hand inspected the Humphries' personal property in the dark and possibly without a flashlight is also unavailing.  Doc. No. 45 at 4.  The portion of Mr. Hand's deposition the Humphries cite mentions nothing whatsoever about the dark or lighting issues in

after the Simmonses' home burned to the ground in what appeared to be an act of arson, the insurance company deemed the Simmonses' fire-loss claim "suspicious" simply because of its temporal proximity to a burglary claim by the Simmonses—notwithstanding the fact that the burglary claim was unquestionably legitimate.[18] The insurance company completely failed to investigate several suspects, despite labeling them as unfinished aspects of its investigation.[19] Rather than completing its investigation, the insurance company simply denied the fire loss claim, contending that the Simmonses had committed insurance fraud by arson. The insurance company did so even though only two of the eight criteria considered to be common indicators of such insurance fraud were satisfied.[20]

The Texas Supreme Court determined that the Simmonses' evidence was legally sufficient for a jury to conclude that the insurance company's investigation had been pretextual and conclusory based on "the investigation standards [the insurance company's] own experts had identified," and that it had breached its duty of good faith and fair dealing.[21] Here, in stark contrast, the Humphries present no investigative standards against which State Farm's investigation can be judged deficient, much less purposefully so. In sum, the Humphries fail to point to any

---

general, and the Humphries do not explain the basis for this claim in their brief. Doc. No. 46-20 at 9; Doc. No. 45 at 4. Such unsupported allegations are no defense against summary judgment.

[18] *Simmons*, 963 S.W.2d at 44.

[19] *Id.* at 45.

[20] *Id.* at 46.

[21] *Id.* at 47.

7

evidence suggesting that State Farm's refusal to pay the Humphries the amount they deem appropriate reflects anything more than a good faith coverage dispute.[22]

Accordingly, the Court **GRANTS** State Farm's motion for partial summary judgment on the Humphries' common law breach of the duty of good faith and fair dealing and related statutory claims.[23]

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** State Farm's motion for partial summary judgment.

**IT IS SO ORDERED** this 9th day of March, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[22] *Id.* at 44. Absent any objective indication that State Farm's investigation was pretextual, the few other evidentiary pieces the Humphries point to, such as State Farm's failure to address Mr. Humphries's initial complaint in a manner satisfactory to the Humphries, cannot independently carry their bad faith claim.

[23] The Humphries' DTPA and Chapter 541 claims are dependent on establishing common law bad faith. Because they cannot do so, "there can be no liability on the statutory bad faith claims based on [Chapter 541] and the DTPA." *Alhamzawi v. GEICO Cas. Co.*, 216 F. Supp. 3d 764, 771 (N.D. Tex. 2016) (Kinkeade, J.).